05-726

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 328

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES LEE HUMPHREY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DC 2000-230,
DC 2003-075, DC 2004-962, DC 2005-154
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy G. Schwartz, Attorney at Law, Billings, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Gayle Stewart,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  March 7, 2007

Decided:  September 23, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 James Lee Humphrey appeals from the sentence imposed by the District Court for the Thirteenth Judicial District, Yellowstone County, following his plea of guilty. We affirm.

## BACKGROUND

¶2 The State filed a petition for revocation in Cause No. DC 00-230, alleging that Humphrey had violated the conditions of a previously imposed suspended sentence. In addition, in three separate cases, the State charged Humphrey with the following offenses: felony theft and five counts of misdemeanor unsworn falsification to authorities (DC 03-075), felony criminal possession of dangerous drugs (DC 04-962), and felony criminal possession with intent to distribute (DC 05-154).

¶3 The State and Humphrey ultimately negotiated a plea agreement under § 46-12-211(c), MCA, to dispose of all four cases. The agreed-upon sentencing recommendations were as follows:

• DC 00-230: four years at the Department of Corrections ("DOC").

• DC 03-075: ten years at DOC with three years suspended, plus a concurrent six-month jail term which was suspended except for time served.

• DC 04-962: five years at DOC.

• DC 05-154: ten years at DOC with five years suspended.

The four sentences were to run concurrently. Thus, the net effect of the plea agreement was a ten-year sentence at DOC with three years suspended.

¶4     At the change-of-plea hearing on May 24, 2005, the District Court advised Humphrey of the maximum possible penalty for each offense. The court also advised Humphrey that "this is a non-binding plea agreement on the Court, and if the Court does not follow the plea agreement, you will not be allowed to withdraw your plea of Guilty as a matter of law." *See* § 46-12-211(2), MCA. Humphrey responded, "Yes, sir, I do understand that."

¶5     Just prior to the court's accepting Humphrey's guilty pleas, the prosecutor interrupted the proceeding and pointed out that the sentence recommended in DC 03-075 (ten years at DOC with three years suspended) was illegal because all but the first five years of a sentence to DOC must be suspended. *See* § 46-18-201(3)(d)(i), MCA (2001). The prosecutor suggested amending the plea agreement to reflect a recommendation under DC 03-075 of ten years at the Montana State Prison ("MSP") with three years suspended.

¶6     Defense counsel stated that he had already "explained to Mr. Humphrey that even though the plea offer said DOC, the reality was probably going to be MSP, given the amount of time." Humphrey then suggested suspending five years instead of three. He also stated he did not want a sentence that would preclude him from getting treatment for his drug addiction. The following colloquy ensued:

> [The Court]:     Mr. Humphrey, um, let me just try to explain a couple of things if I could. I understand that you're, I think you said "I'd like to get a five DOC suspended." Well, the reality is, you've got four different cases here. I don't know how many felonies. Like, five felonies, and you have a criminal possession with intent to distribute, which is a very egregious crime. Nobody's

3

going to give you a five-year suspended and, um, I certainly am not going to, in fact, I think ten MSP with three suspended is very generous. That's basically what you're looking at. You have all these different charges that are running concurrent. And so, I guess, I want to make sure, do you want to go forward? You are looking at a plea agreement of a ten-year Montana State Prison, with three suspended. Do you, are you willing to go forward, knowing that that is truly what the recommendation is going to be?

[Humphrey]: Yes, sir, I am. The reason I said that sir, is 'cause I want treatment for my drug addiction problem. And the way I understand it, the only way to do that is if it's below five, you know.

[The Court]: I don't think that's true. I don't know where you got that.

[Humphrey]: That was my understanding, that's the only reason I said that, 'cause, like I told my attorney here, I want to get treatment, I want to get well so if I come back out here, I don't gotta do this stuff all over again. I don't want to be back in here no more.

¶7 The District Court then struck the term "DOC" on the plea agreement under DC 03-075 and wrote "MSP" in its place. Thus, the recommended sentence read: "Ten (10) years MSP with three (3) years suspended . . . ." Both defense counsel and Humphrey initialed the revisions. Thereafter, the court accepted Humphrey's guilty pleas and his admissions to the alleged probation violations.

¶8 On August 30, 2005, a probation/parole officer with DOC filed a presentence investigation report ("PSI"). Admittedly "stray[ing]" from the parties' plea agreement, the officer recommended sentences amounting to twenty-two years at MSP with seven years suspended. As grounds for this recommendation, she cited the "sheer volume of

4

resources it has taken to stop this defendant's criminal activity in the community" and her determination that Humphrey "has not led a law-abiding life for any substantial period of time before the commission of these crimes."

¶9 The parties appeared before the District Court that same day for purposes of sentencing and disposition. With respect to the State's recommendation, the prosecutor stated: "[T]he State would ask that the Court follow the plea agreement. I would state that the PSI author . . . does disagree with the State's recommendation and the plea agreement." Defense counsel also urged the court to follow the plea agreement, acknowledging that it was "somewhat lenient" but arguing that it was appropriate in light of Humphrey's poor health. Humphrey then spoke on his own behalf, apologizing for "all the trouble" he had caused and requesting that the court go along with the plea agreement. Notwithstanding, the District Court adopted the recommendation of the probation/parole officer in the PSI and imposed the following sentences:

- DC 00-230: seven years at MSP, all suspended.

- DC 03-075: ten years at MSP, plus concurrent six-month jail terms, which were suspended except for time served.

- DC 04-962: five years at MSP.

- DC 05-154: ten years at MSP with five years suspended.

The sentences in DC 00-230, DC 03-075, and DC 04-962 are to run consecutively. The sentence in DC-05-154 is to run concurrently with the others. Thus, the net effect of the sentences is twenty-two years at MSP with seven years suspended.

¶10 Humphrey now appeals.

## ISSUE

¶11 Humphrey's primary argument on appeal is that his guilty pleas were not voluntarily and knowingly made because he was "not adequately informed of the consequences" of pleading guilty. In addition, Humphrey makes a somewhat offhand assertion that the prosecutor breached the plea agreement when, at the sentencing hearing, she informed the court that the author of the PSI did not agree with the State's recommendation. Humphrey's corresponding argument, however, is a single sentence, in which he observes that "[r]equesting the sentencing court follow the plea agreement while at the same time specifically pointing out the pre-sentence author's disagreement with the sentencing recommendation is a questionable practice." Humphrey fails to explain why the prosecutor's statement amounts to a breach of the plea agreement; and while he cites *State v. Bowley*, 282 Mont. 298, 311, 938 P.2d 592, 599 (1997), in support of his position, *Bowley* appears to be distinguishable from the case at hand.

¶12 It is well-established that this Court will not consider unsupported issues or arguments and is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal. *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6; *State v. Miller*, 2008 MT 106, ¶ 15, 342 Mont. 355, ¶ 15, 181 P.3d 625, ¶ 15. Accordingly, we will not address Humphrey's breach-of-agreement contention. Rather, we have determined the sole issue on appeal is whether Humphrey's guilty plea was involuntary because he was not adequately advised of the consequences of pleading guilty.

## STANDARD OF REVIEW

6

¶13 The question of whether a plea was entered voluntarily is a mixed question of law and fact, which we review de novo. *State v. Deserly*, 2008 MT 242, ¶ 9, 344 Mont. 468, ¶ 9, 188 P.3d 1057, ¶ 9.

## DISCUSSION

¶14 Because the process of pleading guilty to a criminal charge involves a waiver of numerous constitutional rights and protections, a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant. *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)). To that end, before accepting a guilty plea, the trial judge must ensure that the defendant understands each of the considerations set out in § 46-12-210(1), MCA. Those include "the nature of the charge for which the plea is offered," "the maximum penalty provided by law" for each charge, and the fact that "if the defendant pleads guilty or nolo contendere in fulfillment of a plea agreement, the court is not required to accept the terms of the agreement." Section 46-12-210(1)(a)(i), (a)(iii), (d), MCA.

¶15 To determine the voluntariness of a guilty plea, this Court applies the standard set forth by the Supreme Court in *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463 (1970). *See Deserly*, ¶ 12; *State v. Lone Elk*, 2005 MT 56, ¶ 21, 326 Mont. 214, ¶ 21, 108 P.3d 500, ¶ 21. Under that standard,

> a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises

7

that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, 90 S. Ct. at 1472 (internal quotation marks omitted). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469.

¶16 In the present case, Humphrey acknowledges that before he changed his pleas, the District Court correctly advised him of the maximum possible penalty for each charge and the fact that the court was not bound by the parties' plea agreement. Humphrey claims, however, that later in the change-of-plea proceeding, the District Court "agreed to be bound by the parties['] plea agreement despite the court's earlier advice to the contrary." As support for this proposition, Humphrey cites the discussion among the court, the prosecutor, defense counsel, and Humphrey concerning the sentence recommended in the plea agreement under DC 03-075. As noted, the prosecutor pointed out that a sentence of ten years at DOC with three years suspended was illegal and, thus, needed to be revised to read "ten years at MSP with three years suspended." Humphrey argues the District Court's "actions in changing the terms on the [plea agreement], coupled with the court's repeated references to the ten with three year sentence Humphrey was 'looking at' justifiably led Humphrey to the conclusion that the actual sentence he was to receive upon his change of plea would be a ten year sentence to [MSP], with three suspended." In light of this allegedly "inconsistent advice" he received during the change-of-plea colloquy, Humphrey contends he was not "adequately advised" of the consequences of pleading guilty. Humphrey also seems to suggest his

8

pleas were involuntary because they were induced by an unfulfilled promise, namely, that the court would follow sentencing recommendations in the plea agreement.

¶17   Before addressing this argument, we note the State's contention that Humphrey's claim is procedurally barred by § 1-3-207, MCA, and *State v. Micklon*, 2003 MT 45, ¶ 10, 314 Mont. 291, ¶ 10, 65 P.3d 559, ¶ 10.  According to the State, Humphrey's claim is based on an error to which he "acquiesced" in the District Court.  The State points to the fact that Humphrey initialed the change of "DOC" to "MSP" on the plea agreement. This contention, however, is wholly without merit and completely misstates Humphrey's argument.  Humphrey did not "acquiesce" in a sentence beyond the plea agreement by initialing this change.  Moreover, he does not claim the District Court erred; rather, he claims the court's statements and actions led him to believe the court was agreeing to be bound by the agreement.  Humphrey's claim is not procedurally barred.

¶18   Nevertheless, the portions of the colloquy on which Humphrey relies do not support his argument.  Indeed, the District Court informed him not that it would follow the plea agreement, but that it was changing "DOC" to "MSP" in accordance with the parties' discussion, in which Humphrey himself had just participated.  The court stated:

> I think ten MSP with three suspended is very generous.  That's basically what you're looking at.  You have all these different charges that are running concurrent.  And so, I guess, I want to make sure, do you want to go forward?  You are looking at a plea agreement of a ten-year Montana State Prison, with three suspended.  Do you, are you willing to go forward, knowing that that is truly what the recommendation is going to be?

¶19   Humphrey emphasizes the court's statements, "I think ten MSP with three suspended is very generous.  That's basically what you are looking at."  When these

statements are read in context, however, it is clear the court was referring to the corrected *recommendation* in the plea agreement under DC 03-075. Indeed, immediately after making these statements, the court told Humphrey he was looking at "a plea agreement" of ten years at MSP with three suspended and that this was truly what the "recommendation" was going to be. Moreover, this entire discussion related to the problem that a ten-year commitment to "DOC" with three years suspended was illegal and the plea agreement, therefore, needed to be revised to read "MSP." The court's remarks do not amount to an assurance that it was actually going to impose this sentence.

¶20 Humphrey also relies on the conversation which occurred shortly after the quoted text above. He emphasizes the language italicized below:

[The Court]: Okay. *So I'm going to make a change on here that says ten years, Montana State Prison. Are you okay with that? Because I'm going to have you initial it just so that there is no misunderstanding. . . .*

[Humphrey]: I wanted DOC, though.

[Defense Counsel]: Well, we talked about that.

[The Court]: It's on page three, if you'd have Mr. Humphrey review that, and if he understands that's what we are talking about in reality…

[Humphrey]: What is the difference between an MSP commitment and a DOC commitment?

[The Court]: The most you can suspend on a DOC is five years. That's not true on a MSP.

[Humphrey]: That's the only difference between a DOC and MSP?

[The Court]: Well, MSP means for sure, you are going to go to prison. With a long sentence on this like a with a

10

> DO… a DOC sentence means the DOC department, Department of Corrections decides where you are going to go. It's not a for certain that it's going to be prison. *What I can tell you as [Defense Counsel] said, when you are looking at a ten with three suspended, it will be Montana State Prison. That's their policy. This just makes it clear up front, to you, that your first step will be the Montana State Prison.*

[Humphrey]:  The \<inaudible\> time and all that stuff is all the same with MSP as it is with DOC and…

[The Court]:  Yes.

[Humphrey]:  Oh, okay. Well, that's what I was worried about. I was wondering about that.

Again, when the District Court's statements are read in context, it is clear that the court was simply explaining the revision of "DOC" to "MSP" in the plea agreement.

¶21  Humphrey, nevertheless, apparently viewed things differently, and this brings us to the crux of the issue. He claims the District Court conveyed "the impression" that it had agreed to be bound by the terms of the plea agreement. He also claims the court's comments and actions gave him "the understanding" that the only sentence he was facing was the sentence that had been recommended by the parties. In essence, Humphrey maintains he subjectively believed the court would follow the plea agreement.

¶22  As stated above, a plea of guilty must be a "voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." *Radi*, 250 Mont. at 159, 818 P.2d at 1206. Accordingly, before pleading guilty, the defendant must be "fully aware" of the direct consequences of doing so, *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472 (internal quotation marks omitted), and must "understand[ ]" the rights and

11

protections being waived, § 46-12-210(1), MCA. These standards suggest our analysis must take into account Humphrey's subjective perceptions. *See Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984) ("This court must . . . assess the voluntariness of [the defendant's] plea in light of all the relevant circumstances surrounding that plea, including the subjective perceptions of the defendant at the time of his agreeing to plead guilty." (citations and internal quotation marks omitted)); *cf. United States ex rel. Thurmond v. Mancusi*, 275 F. Supp. 508, 516 (E.D.N.Y. 1967) ("[V]oluntariness connotes a state of mind of an actor. If the actor—i.e., the defendant—believes that a promise has been made, the effect on his state of mind is exactly the same as if such a promise had in fact been made. Thus, any test of whether a person acts voluntarily is necessarily 'subjective.' "); *but see United States ex rel. LaFay v. Fritz*, 455 F.2d 297, 303 (2d Cir. 1972) (rejecting *Thurmond*'s subjective test).

¶23    Yet, while a defendant's subjective perceptions shed light on his state of mind, which in turn bears on the voluntariness of his plea, allegations of having had certain mental impressions at the time of the plea must be supported by objective proof in the record. *See United States ex rel. Robinson v. Housewright*, 525 F.2d 988, 991-92 (7th Cir. 1975) ("We deem it preferable to base an analysis upon objective record facts rather than upon the defendant's recital of what he now claims were his subjective mental impressions."); *Toler v. Wyrick*, 563 F.2d 372, 373 (8th Cir. 1977) ("Determination of the defendant's state of mind is certainly critical in determining the voluntariness of a plea. However, to a large extent, it is to be determined by examining the totality of the circumstances surrounding the plea instead of solely on the basis of the defendant's

subsequent testimony." (citations omitted)).  Moreover, the mental impressions must be

reasonably justified under the circumstances.  Of particular relevance to the issue at hand,

the court in *People v. Artale*, 612 N.E.2d 910 (Ill. App. 2 Dist. 1993), observed:

> In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea.  Rather, the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression.

*Artale*, 612 N.E.2d at 915 (citation omitted).  Numerous cases espouse a similar rule.[1]

---

[1] *See United States v. Doyle*, 981 F.2d 591, 596 (1st Cir. 1992) ("[T]o invalidate a guilty plea, a defendant's misimpression must, at the very least, be both objectively reasonable and related to a material matter."); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("[A] defendant's mistaken subjective impressions . . . , in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea."); *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976) ("Where the record shows that circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression, a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily." (internal quotation marks omitted)); *United States v. Roberts*, 570 F.2d 999, 1008-09 (D.C. Cir. 1977) ("Courts have been reluctant to allow withdrawal of guilty pleas on allegations of misunderstanding resulting from a defendant's purely 'subjective' beliefs, but whenever there is objective evidence that the defendant had been justifiably confused concerning the plea bargain, withdrawal is usually permitted as a matter of course." (footnote omitted)); *Mosher v. LaVallee*, 351 F. Supp. 1101, 1108 (S.D.N.Y. 1972) ("[A] plea is not involuntary merely because the defendant pleads guilty under the subjective mistaken impression or belief that a promise has been made by the judge that a lenient sentence would be given when instead the sentence was a heavy one."), *aff'd*, *Mosher v. Lavallee*, 491 F.2d 1346 (2d Cir. 1974) (per curiam); *State v. Snyder*, 701 P.2d 969, 973 (Kan. App. 1985) ("[M]istaken subjective impressions, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to vacate a guilty plea." (internal quotation marks omitted)); *In re Stevens*, 478 A.2d 212, 215 (Vt. 1984) ("Withdrawal of a guilty plea will not be allowed for a subjective mistake absent some objective evidence reasonably justifying the mistake.").

¶24    This approach, with which we agree, is critical to the finality of guilty pleas. Without it, a defendant could plead guilty "with the assurance that if he should later be disappointed at the treatment accorded him he could withdraw his plea and demand a trial on the ground that at the time of his guilty plea he had labored under an erroneous impression as to what would happen to him after acceptance of the plea." *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972); *see also Calabrese v. United States*, 507 F.2d 259, 260 (1st Cir. 1974) ("In the absence of any indication that appellant was misled by the prosecutor, or that the sentencing court failed adequately to probe appellant's state of mind, we cannot look into the subjective mental set of appellant to see to what extent misconceptions played a part in his guilty plea. . . . [S]uch a rule would virtually give a defendant an argument for a veto every time he received a sentence not to his liking.").

¶25    This approach is also consistent with the objective standard applicable in other related contexts. For instance, in determining whether a plea agreement has been broken, "courts look to what was reasonably understood by [the defendant] when he entered his plea of guilty. If disputed, the terms of the agreement will be determined by objective standards." *United States v. Clark*, 781 F.2d 730, 731 (9th Cir. 1986) (brackets in original, citations and internal quotation marks omitted). Similarly, in *State v. Brown*, 262 Mont. 499, 503-04, 865 P.2d 282, 284-85 (1993), we held that a trial court must strictly comply with § 46-12-210(1)(a)(iii), MCA, and correctly inform a defendant of the maximum possible penalty for the charged offense, irrespective of whether the defendant may already have subjective knowledge of the maximum.

14

¶26 Here, as noted, Humphrey claims the District Court's "actions in changing the terms on the [plea agreement], coupled with the court's repeated references to the ten with three year sentence Humphrey was 'looking at' justifiably led Humphrey to the conclusion that the actual sentence he was to receive upon his change of plea would be a ten year sentence to [MSP], with three suspended." We cannot agree that this mistaken impression was reasonably justified under the circumstances existing at the time.

¶27 The parties and the court were correcting an error in the plea agreement, and Humphrey's statements indicate he understood this. It does not appear during the colloquy that the court "agreed to be bound" by the plea agreement; rather, it is clear the court sought to clarify the sentencing recommendation, explain the difference between "DOC" and "MSP," and ensure that Humphrey was "willing to go forward, knowing that that is truly what the *recommendation* is going to be" (emphasis added).

¶28 Humphrey's own statements are consistent with this interpretation. Indeed, though he expressed concern about being sentenced to MSP instead of DOC, he did not indicate in any way that he thought the court was promising to follow the plea agreement. While he now claims he did, in fact, understand the District Court to be assuring him of a particular sentence, there is not substantial objective proof in the record supporting this claim.

¶29 Lastly, we are not persuaded by Humphrey's proffered scenario that he began the change-of-plea hearing with the understanding that the District Court was not bound by the plea agreement, that he was willing at that point to plead guilty, but that his pleas ultimately were involuntary because the court's subsequent actions led him to believe the

15

court was binding itself to the plea agreement. If he was willing to plead guilty knowing the court was not bound by the plea agreement, we fail to understand why the court's actions suddenly caused him to be willing to plead guilty *only if* the court agreed to be bound by the plea agreement. This unexpressed change of heart, being highly implausible, requires greater substantiation than Humphrey has provided.

## CONCLUSION

¶30 Humphrey has failed to show with substantial objective proof that his mistaken impression—namely, that the District Court had "agreed to be bound" by the plea agreement—was reasonably justified under the circumstances existing at the time of his pleas. Thus, he has not established his guilty pleas in this case were involuntary.

¶31 Affirmed

/S/ JAMES C. NELSON

We C/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JOHN WARNER

16