DA 07-0392

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 200

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHANCE LEMAR BRINSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2005-553
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Katie Irene Olson, Jasper, Smith Olson, P.C., Missoula, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney, Suzy Boylan,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs: April 1, 2009

Decided: June 9, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to a plea agreement, Chance Brinson pleaded guilty in September 2006 to one count of sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. The Fourth Judicial District Court, Missoula County, then sentenced him to the Montana State Prison for 20 years, with 10 years suspended. In addition, the court imposed 56 terms and conditions on the suspended portion of the sentence. Thereafter, Brinson filed two motions to withdraw his guilty plea, which the District Court summarily denied.

¶2 Brinson now appeals, contending that the District Court erred in denying his motions to withdraw his guilty plea. Brinson also challenges three of the terms and conditions of his sentence. We affirm.

### ISSUE 1: Brinson's motions to withdraw his guilty plea

¶3 We review a district court's denial of a motion to withdraw a guilty plea de novo. *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352, 114 P.3d 254. The question of whether a plea was entered voluntarily is a mixed question of law and fact, which we review de novo. *State v. McFarlane*, 2008 MT 18, ¶ 8, 341 Mont. 166, 176 P.3d 1057.

¶4 In the Plea Bargain Agreement, the parties agreed to the following sentence as the appropriate disposition of the case:

> Count 1: A maximum of 20 years all suspended on the condition that the Defendant complete a sex offender evaluation with an MSOTA [Montana Sexual Offender Treatment Association] qualified evaluator and that the evaluator concludes that the Defendant is a low risk to reoffend and can be treated in the community. In the event the evaluator concludes the defendant is not a low risk to re-offend and/or cannot be treated in the

2

community, the State and Defendant will be free to argue for an appropriate sentence.

¶5 The District Court accepted Brinson's guilty plea on September 14, 2006, and ordered a presentence investigation report (PSI). Meanwhile, Brinson obtained two psychosexual evaluations. The first evaluation (the Clodfelter Evaluation), dated October 23, 2006, was prepared by an MSOTA-qualified evaluator (Lindsay Clodfelter) who concluded that Brinson should be designated a level 2 offender, i.e., a "moderate risk" of a repeat sexual offense. The second evaluation (the Zook Evaluation), dated December 20, 2006, was prepared by a non-MSOTA-qualified evaluator (Donna Zook) who concluded that Brinson should be designated a level 1 offender, i.e., a "low risk" of a repeat sexual offense. *See* § 46-23-509(2), MCA. The probation/parole officer who prepared the PSI reviewed both evaluations and recommended that Brinson be designated a level 2 offender and that he be sentenced to the Montana State Prison for 20 years with 10 years suspended.

¶6 At the sentencing hearing, the District Court interpreted the plea agreement as follows: If an MSOTA evaluator concludes that Brinson is a level 1 offender (low risk to reoffend), then the agreement is binding, but if an MSOTA evaluator gives a designation higher than level 1, then each side may argue for the appropriate sentence. Thus, the court reasoned that since the only MSOTA evaluation provided to the court stated that Brinson was a level 2 offender (moderate risk to reoffend), the 20-year, all-suspended sentence contained in the plea agreement was not binding. Notably, defense counsel stated that he "regret[ted]" having included the MSOTA language in the plea agreement,

3

but he acknowledged that the prosecutor could argue any sentence that she felt was appropriate. The District Court ultimately adopted the sentencing recommendations in the PSI and sentenced Brinson to 20 years at the Montana State Prison with 10 years suspended.

¶7     Brinson argues on appeal that his plea was not voluntary and that involuntariness constitutes "good cause" for withdrawing a plea. Furthermore, citing *State v. Deserly*, 2008 MT 242, ¶ 15, 344 Mont. 468, 188 P.3d 1057, and *State v. Lone Elk*, 2005 MT 56, ¶ 21, 326 Mont. 214, 108 P.3d 500, he argues that a defendant's plea is not voluntary if it was induced, "however slightly," by misrepresentation, including unfulfilled or unfulfillable promises. Brinson claims that such circumstances occurred here and, therefore, that he should have been allowed to withdraw his guilty plea. Specifically, he explains that he pleaded guilty with the understanding that the Zook Evaluation, in which he was found to be a level 1 offender, would "carry the same weight" at sentencing as the Clodfelter Evaluation, in which he was found to be a level 2 offender. Yet, according to Brinson, the Zook Evaluation turned out to be "useless" because Zook was not MSOTA qualified. Brinson thus contends that his belief that the sentencing judge would accept the Zook Evaluation and impose the sentence contained in the plea agreement was "an unfulfillable promise." Brinson further argues that, "by some degree, 'however slight,' " his attorney misled him (albeit "unintentionally") into thinking that the Zook Evaluation would satisfy the terms of the plea agreement. Thus, Brinson concludes that he was induced by a misrepresentation and an unfulfillable promise to change his plea to guilty and that his plea, therefore, was not voluntary.

4

¶8     Brinson is correct that involuntariness constitutes "good cause" for withdrawal of a guilty plea under § 46-16-105(2), MCA. *See Lone Elk*, ¶ 19. Brinson is also correct that a defendant's plea of guilty is not voluntary if the court, the prosecutor, defense counsel, or some other party induced the plea by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes). *See Deserly*, ¶ 12; *Lone Elk*, ¶ 21; *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970). But the "however slightly" standard that Brinson accurately quotes from *Deserly*, ¶ 15, and *Lone Elk*, ¶ 21, is not correct.

¶9     In *Warclub*, we explained that the Court in *Lone Elk* had inadvertently adopted the "however slightly" language from a portion of the *Brady* opinion in which the Supreme Court discussed *Bram v. United States*, 168 U.S. 532, 18 S. Ct. 183 (1897), and the voluntariness of *confessions*, not guilty pleas. *See Warclub*, ¶ 18 and n. 1; *see also e.g. State v. Reavley*, 2003 MT 298, ¶ 16, 318 Mont. 150, 79 P.3d 270. We stated that our intention in *Lone Elk* had been to adopt *Brady*'s standard for the voluntariness of guilty pleas, but without incorporating *Bram*'s "however slight" standard for the voluntariness of confessions. *See Warclub*, ¶ 18; *accord State v. Leitheiser*, 2006 MT 70, ¶¶ 18-19, 331 Mont. 464, 133 P.3d 185. Nevertheless, we recently quoted the "however slightly" language from *Lone Elk* in *Deserly*, ¶¶ 15, 19.[1] Although this language was not critical to

_____

[1] The State brought this to our attention in its response brief in *State v. Crawford* (No. 08-0210), filed October 14, 2008.

5

our decision in *Deserly*, it was, in any event, incorrect. Accordingly, so as to eliminate any further confusion and inconsistency in this area of law, we again disapprove the "however slightly" language contained in *Deserly*, ¶¶ 15, 19, and *Lone Elk*, ¶¶ 21, 22, and we overrule these two cases on this specific point.

¶10 Our reaffirmation that the "however slightly" standard does not apply to the analysis of a plea's voluntariness does not change our decision in this case. As the State correctly points out, Brinson's decision to plead guilty could not have been influenced *in any way* by the Zook Evaluation or any expectation arising out of that evaluation for the simple reason that he signed the plea agreement and entered his plea of guilty before any psychosexual evaluation had been completed.[2] Indeed, Brinson acknowledges that he did not even *request* an evaluation by Zook until after he had received the Clodfelter Evaluation in October 2006 (a month after he had entered his guilty plea).

¶11 Brinson asserts that when he entered into the plea agreement, he was "armed with the good faith belief" that he would be designated a low risk to reoffend. Brinson further asserts that after receiving the Zook Evaluation, his "reasonable expectation of the potential of a suspended sentence was bolstered." As we explained in *Deserly*, however, the issue is whether, *at the time the defendant entered his guilty plea*, he was induced to do so by any of the circumstances contemplated by *Brady* or *Lone Elk*. *Deserly*, ¶ 18. Any sentencing expectations that arise *subsequent* to his change of plea do not determine

---

[2] Brinson pleaded guilty on September 14, 2006. According to Clodfelter's report, she reviewed the public defender's file on September 8 and first interviewed Brinson on September 22. Her final report is dated October 23. According to Zook's report, she met with Brinson on December 9, and her report is dated December 20.

6

whether the plea was voluntary at the time it was entered. Thus, the fact that Brinson's expectations were "bolstered" three months after he entered his guilty plea is totally irrelevant to whether his plea was voluntary *at the time it was entered*.

¶12 Furthermore, we explained in *State v. Humphrey*, 2008 MT 328, 346 Mont. 150, 194 P.3d 643, that "while a defendant's subjective perceptions shed light on his state of mind, which in turn bears on the voluntariness of his plea, allegations of having had certain mental impressions at the time of the plea must be supported by objective proof in the record." *Humphrey*, ¶ 23. Here, the plea agreement clearly states that a sentence of 20 years, all suspended, is the appropriate sentence "*on the condition* that the Defendant complete a sex offender evaluation with an MSOTA qualified evaluator and that the evaluator concludes that the Defendant is a low risk to reoffend and can be treated in the community" (emphasis added). While Brinson may have had a "good faith belief" that he ultimately would be designated a low risk to reoffend, he has presented no objective proof that he was assured of receiving this designation. The plea agreement contains no such guarantee. To the contrary, it explicitly contemplates that a "low risk" designation may *not* be forthcoming: "In the event the evaluator concludes the defendant is not a low risk to re-offend and/or cannot be treated in the community, the State and Defendant will be free to argue for an appropriate sentence." And as for Brinson's purported belief, at the time he pleaded guilty, that an evaluation prepared by a non-MSOTA-qualified evaluator would satisfy the condition contained in the plea agreement (which required an MSOTA-qualified evaluator), Brinson has not shown with objective proof that this belief was reasonably justified. *Humphrey*, ¶ 23.

7

¶13     Brinson has not persuaded us that his plea was involuntary because it was induced by a misrepresentation or an unfulfillable promise. Accordingly, we hold that the District Court did not err in denying his motion to withdraw his guilty plea.

### ISSUE 2:  Brinson's Sentencing Challenges

¶14     When this Court reviews a condition on a deferred or suspended sentence, the threshold question is whether the condition is legal. *State v. Nelson*, 2008 MT 359, ¶¶ 19, 27, 346 Mont. 366, 195 P.3d 826 (citing *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164).  If the condition is legal, we then determine whether the district court abused its discretion in imposing the condition. *Nelson*, ¶ 20 (citing *Ashby*, ¶ 9).

¶15     Brinson challenges three of the terms and conditions of his sentence:

Unnumbered Condition:  "[A]ny contact the Defendant has with his daughter shall be supervised until such time as a counselor makes a different recommendation."

Condition 46:  "The Defendant will not view television shows or motion pictures, which are geared toward his/her sex offending cycle, or as a stimulus to arouse deviant thoughts or fantasies. (i.e., shows based on sexualization of underage girls or boys, etc.)."

Condition 48:  "The Defendant will not have a cell phone, or such other technology/device, with photo, video, or Internet capabilities allowed.  If a cell phone is used, all bills and records will be made available to the supervising officer."

¶16     Under §§ 46-18-201(4)(n) and -202(1)(f), MCA (2003),[3] a sentencing court may impose on a deferred or suspended sentence any reasonable restrictions or conditions that are necessary and reasonably related to the objectives of rehabilitation or the protection

_____

[3] Brinson committed the charged offense in September 2005.  The law in effect at the time an offense is committed controls as to the possible sentence for the offense. *State v. Brister*, 2002 MT 13, ¶ 26, 308 Mont. 154, 41 P.3d 314; *accord State v. Striplin*, 2009 MT 76, ¶ 30, 349 Mont. 466, 204 P.3d 687.

8

of the victim and society. We have upheld two types of sentencing conditions under these provisions: those which limit a defendant's conduct and those requiring payment of restitution to a victim of the offense. *See State v. VanWinkle*, 2008 MT 208, ¶ 13, 344 Mont. 175, 186 P.3d 1258; *State v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. The three conditions Brinson challenges here limit his conduct as contemplated by §§ 46-18-201(4)(n) and -202(1)(f), MCA. Accordingly, they are legal conditions of sentence. *Stiles*, ¶ 14.

¶17 We apply a nexus test to determine whether a district court abused its discretion in imposing the challenged sentencing condition. *Stiles*, ¶ 13. Specifically, we will strike a condition if it lacks a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself. *Ashby*, ¶ 15. Moreover, with respect to offender-related conditions, sentencing courts may impose such conditions only where the history or pattern of conduct to be restricted (e.g., alcohol or drug abuse) is "recent, and significant or chronic." *Ashby*, ¶ 15.

¶18 Here, with respect to the condition stating that any contact Brinson has with his underage daughter (born in September 1997) must be supervised until such time as a counselor makes a different recommendation, we note that Brinson initially objected to this condition but ultimately agreed that it "makes sense." Specifically, he stated (through counsel): "I would agree supervised visitation on an interim basis until -- until a professional was satisfied that unsupervised visitation was appropriate makes sense." Whether Brinson withdrew his objection is somewhat unclear. But, in any event, while he contends that he "has not been found to have any sexual inclinations toward his

9

daughter" and that his daughter "was in no way involved in the underlying matter," we agree with the State that this condition bears a nexus to his offense of sexual intercourse without consent. That offense involved a 14-year-old girl (Brinson was 34 at the time), and Brinson has been designated a level 2 offender, which means there is a "moderate" risk of a repeat sexual offense. Section 46-23-509(2)(b), MCA.

¶19 As for Condition 46, which prohibits Brinson from watching certain types of television shows or motion pictures, and Condition 48, which limits his use of cell phones and other such devices with photo, video, or Internet capabilities, Brinson makes a brief and largely conclusory argument that these conditions are "overbroad" and have no nexus to him or to his underlying offense. As the State points out, however, these conditions were discussed during the sentencing hearing. The court explained that Brinson would violate Condition 46 "if there's some similarity between what he's watching and what happened in this case." The court further clarified with regard to Condition 48 that Brinson was not prohibited from using a cell phone for employment purposes and that the probation officer could have access to his phone records simply to verify that the phone was not being used for improper purposes. We agree with the State that such restrictions have a nexus to Brinson's sexual offense and that these limitations on his ability to access and view pornographic material are reasonably related to the objectives of his rehabilitation. Indeed, Brinson stated (through counsel) at the sentencing hearing: "I would agree that [Brinson] needs to avoid pornography and -- and shows like that."

¶20 We conclude that the District Court did not abuse its discretion in imposing the three conditions challenged by Brinson.

10

¶21   Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE