FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0211

DA 22-0211

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 193N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

BRANDEN CONRAD MIESMER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-15-433
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

      Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

      Josh Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  June 19, 2024

Decided:  August 27, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinio of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Branden Conrad Miesmer (Miesmer) appeals an order from the Eighth Judicial District Court, Cascade County, denying a motion to withdraw his guilty plea.

¶3 We affirm.

¶4 The procedural history leading up to this appeal is complex, and it was carefully scrutinized in the District Court's March 2, 2022 Amended Order Denying Defendant's Post-Sentence Motion to Withdraw Guilty Plea (Order). We thus recount only the relevant details below.

¶5 On September 15, 2015, the State charged Miesmer with Deliberate Homicide after he injected methamphetamine into himself and murdered Cody Bruyere by shooting him in the face at point-blank range.

¶6 Miesmer subsequently admitted committing the homicide to multiple people. In his first post-arrest interview with detectives, for example, Miesmer stated "I won't bullshit you, man, I'll plead guilty to all charges. I won't prolong, I won't get a lawyer. What I did I did."

¶7     On January 5, 2016, Miesmer filed a notice of intent to assert Justifiable Use of Force and/or Duress as affirmative defenses.  Further, on January 13, 2016, he moved to suppress evidence of his admission of guilt to detectives.[1]

¶8     On February 2, 2016, Miesmer changed his defense strategy.  He told his attorneys, public defenders Mark Frisbie (Frisbie) and  Steven Scott (Scott),  that he was open to any plea agreement that "had him in prison for 60 years or less."  Miesmer's attorneys thus advised the State that Miesmer would plead guilty in exchange for a sentence recommendation of an 80-year prison term with 20 years suspended.

¶9     The State countered with a draft written plea agreement that included a 100-year sentence without a recommendation for a parole restriction.  In two different places, the State's offer expressly advised that the plea agreement would not be binding on the District Court's ultimate sentencing decision.

¶10     During a February 23, 2016 meeting at the county jail, Frisbie and Scott discussed the terms of the State's offer with Miesmer.  Frisbie later testified that he was certain that he brought the State's draft plea agreement with him to the meeting and discussed it with Miesmer in detail.  Miesmer now disputes whether Frisbie provided anything more than a summary and denies that he was ever aware of the language stating that the agreement would not be binding on the District Court's sentence.[2]

---

[1] The District Court never ruled on this motion, as Miesmer's ultimate guilty plea rendered the issue moot.

[2] Based on Miesmer's allegations regarding his attorneys, the District Court conducted a hearing on June 20, 2016, allowing the attorneys to disclose attorney-client communications.  In its Order, the District Court ruled Miesmer was fairly apprised of the State's draft plea agreement.

¶11 At the same meeting, Miesmer asserted his resolve to "plead straight up" and forego a plea agreement altogether. Frisbie recalls explaining to Miesmer that doing so could work in his favor, as the District Court might look favorably upon his decision to be forthcoming at sentencing.

¶12 On February 29, 2016, Miesmer thus asked the court to set a change of plea hearing, indicating that he was "going to plead straight up to the charges filed." The District Court set the change of plea hearing for March 18, 2016.

¶13 Over the course of the following month, however, Miesmer's relationship with his attorneys deteriorated due to his apparent dissatisfaction with the quality of their work. Based on how things were going, Frisbie and Scott figured that Miesmer would request their discharge and replacement at the change of plea hearing. Miesmer "changed his mind so often that nothing was ever permanently off the table," and Frisbie and Scott were uncertain whether Miesmer intended to plead guilty at all.

¶14 While Frisbie and Scott were trying to come to an agreement with Miesmer about his defense strategy, the District Court agreed to vacate the March 18, 2016 change of plea hearing. The District Court set a status hearing for March 25, 2016, the following week.

¶15 At the March 25, 2016 hearing, prior to the start of formal proceedings, Frisbie discussed two documents with Miesmer: a Notice of Intent to Make Open Plea Pursuant to MCA § 46-12-204 (Notice of Intent), and an Acknowledgment of Waiver by Plea of Guilty (Waiver). The Notice of Intent provided:

> [Miesmer] intends to plea[d] GUILTY to deliberate homicide. The defendant makes this plea of guilty without the written assurances of a written plea agreement with the county attorney . . . defendant recognizes

4

that sentencing in this matter is entirely within the discretion of the presiding District Court Judge, subject only to the limits of statutory and case law. The defendant will not be able to withdraw his plea of guilty after sentencing . . . the defendant understands that there is no plea agreement: the county attorney is not bound to recommend any sentence at the sentencing hearing.

The Waiver included the following:

I acknowledge and I fully understand that . . . I am charged with the offenses of . . . DELIBERATE HOMICIDE . . . [and] A person convicted of the offense of deliberate homicide shall be punished by life imprisonment, or by imprisonment in the state prison for a term of not less than 10 years or more than 100 years.

.   .   .

I am not suffering any emotional or mental disability from any cause including mental disease or defect and am not impaired from taking any drugs, alcohol, or prescription medication. I fully understand what I am doing . . . The following are the facts that cause me to plead guilty. I believe I am guilty of the offense because I did the following: I purposely or knowingly shot Cody Bruyere.

¶16 Miesmer signed the Notice of Intent and Waiver and pleaded guilty. During the plea colloquy, the District Court emphasized that Miesmer was pleading guilty without a plea agreement that would require the prosecutors to make any particular sentencing recommendation; that the District Court would not be bound by any sentencing recommendations by the defense team; and that Miesmer would not be allowed to withdraw his guilty plea. Miesmer affirmed that he understood the consequences of the open plea. Miesmer also affirmed that his attorneys had reviewed discovery with him; his attorneys had enough time to prepare a defense; he was satisfied with the services his attorneys provided; he was pleading guilty freely and voluntarily; and he was not suffering from any

5

emotional or mental disease or defect that would keep him from understanding what he was doing.

¶17 On April 28, 2016, Miesmer sent messages from the jail (kites) asking the District Court to discharge Frisbie and Scott and to permit withdrawal of his guilty plea. Miesmer asserted that Frisbie and Scott provided ineffective assistance of counsel (IAC) because they failed to get Miesmer a second psychiatric evaluation;[3] did not explain the purpose of the March 25, 2016 status hearing; refused to provide Miesmer with legal materials and/or recruit college students to help with legal research; failed to prepare or discuss a plan to pursue a lesser included offense of Mitigated Deliberate Homicide; failed to visit Miesmer frequently enough in jail; failed to review the State's discovery production with him; failed to locate and interview potential witness Vanessa Whitish; and repeatedly made statements that Miesmer would not prevail at trial.

¶18 At a June 20, 2016 hearing pertaining to his representation, Scott and Frisbie responded to each of Miesmer's allegations in turn. The District Court determined that they provided "credible responses" dispelling each of Miesmer's allegations. Significantly, Scott explained "without contradiction by Mr. Miesmer, that the idea of an open plea (pleading guilty without any contractual right to any favorable sentencing recommendation by the State), originated with Mr. Miesmer." The District Court denied Miesmer's request to discharge and replace Frisbie and Scott, ruling that Miesmer's

---

[3] Miesmer's first psychiatric evaluation concluded that he was fit to proceed, and nothing affected "his ability to understand his legal situation or consult with his attorneys."

complaints were "only tactical and strategic disagreements and that they did not rise to the level of a total breakdown in client-lawyer communications."

¶19 On June 27, 2016, Miesmer—still represented by Frisbie and Scott—filed a motion to withdraw his guilty plea.

¶20 However, Miesmer subsequently changed his mind once again. On October 11, 2016, he moved for a sentencing date, asserting that he wanted "to just go to sentencing and to withdraw his motion to withdraw his guilty plea."

¶21 At the November 4, 2016 sentencing hearing, Miesmer affirmed that he wanted to withdraw his still-pending Motion to Withdraw Guilty Plea and Request for a Hearing:

> DISTRICT COURT: The matter before the Court is a sentencing hearing. Before we proceed further with that, I need to find out and make sure that it's abundantly clear on the record that you are, in fact, withdrawing your previous motion to withdraw your guilty plea.
>
> MIESMER: Yes, Your Honor.

¶22 The District Court sentenced Miesmer to 100 years without parole.

¶23 On March 7, 2017, we granted Miesmer leave to file an out-of-time appeal. Miesmer's new counsel from the Appellate Defender Division of the Office of State Public Defender filed the petition.

¶24 On March 13, 2017, acting pro se, Miesmer moved the District Court to withdraw his guilty plea. The District Court notified the parties that it could not rule on Miesmer's motion because two courts could not have jurisdiction at the same time, and this Court had assumed jurisdiction upon granting leave to file an out-of-time appeal.

¶25 On January 19, 2018, we dismissed Miesmer's first appeal upon his motion.

7

¶26 On February 13, 2018, Miesmer renewed his plea withdrawal motion before the District Court.

¶27 On March 2, 2022, following federal court proceedings on related charges, the District Court denied Miesmer's motion to withdraw his guilty plea, holding that Miesmer "knowingly, voluntarily, and intelligently took the risk [of an open plea], does not like the result, and now wants to start over. The law does not require this, and the Court declines to permit it."

¶28 In this appeal, Miesmer asserts his attorneys failed to adequately apprise him of the scope of the March 25, 2016 open plea and rushed him to sign the Notice of Intent and Waiver. Miesmer further alleges that the District Court failed to advise him as to the status of his suppression motion and the potential for a "special parole restriction" as required by § 46-2-210(1)(a)(iii), MCA. Miesmer contends that, given these alleged shortcomings, he did not enter the plea agreement "knowingly and voluntarily," thus the Waiver was defective and the District Court erred in denying his plea withdrawal motion.

¶29 The issue of whether a guilty plea was entered voluntarily is a mixed question of law and fact. *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352,114 P.3d 254 (citation omitted). We review a district court's findings of fact for clear error and its conclusions of law for correctness. *State v. McFarlane*, 2008 MT 18, ¶ 8, 341 Mont. 166, 176 P.3d 1057 (citation omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the factfinder misapprehended the effect of the evidence, or if a review of the record convinces us that a mistake has been made. *Warclub*, ¶ 23.

¶30 "A guilty plea must be a voluntary, knowing, and intelligent choice due to a defendant's waiver of numerous constitutional rights and protections when he makes such a plea." *State v. Humphrey*, 2008 MT 328, ¶ 14, 346 Mont. 150, 194 P.3d 643 (citations omitted). We consider all of the relevant circumstances when assessing the voluntariness of a plea, including "the adequacy of the district court's interrogation, the benefits obtained from a plea bargain, the withdrawal's timeliness, and other considerations that may affect the credibility of the claims presented." *McFarlane*, ¶ 17 (citation omitted).

¶31 The District Court did not err in ruling that Miesmer made his open plea voluntarily, knowingly, and intelligently. The District Court properly concluded that it had authority to restrict his parole under § 46-18-202(2), MCA, and that Miesmer was fairly apprised of "the maximum penalty provided by law." Section 46-12-210, MCA. Moreover, Miesmer's counsel adequately advised him that an open plea could lead to a parole restriction and that a waiver of rights would foreclose his ability to plead affirmative defenses and/or argue for lesser-included charges. We are not convinced that a mistake was made. *Warclub*, ¶ 23.

¶32 The record reflects that the District Court had sufficient grounds to restrict Miesmer's parole eligibility. A district court may "impose the restriction that the offender is ineligible for parole" if it determines that "the restriction is necessary for the protection of society," and includes in the judgment a "statement of the reasons for the restriction." Section 46-18-202(2), MCA. The District Court accordingly restricted Miesmer's eligibility for parole, ruling that Miesmer could not be rehabilitated to an extent that would render him safe to society. The judgment contained a "statement of the reasons for the

9

restriction[,]" referencing the findings of the presentence investigation report, "testimony that [Miesmer had] been heading to this point for a long time," and Miesmer's "lack of remorse when [he was] discussing the situation with the detective and the Lewis & Clark County deputies immediately after [his] apprehension." Based on the facts before us, we are not persuaded that the District Court clearly erred in making this determination. *Warclub*, ¶ 23.

¶33 Finding the parole restriction adequately justified, we decline to remand for resentencing on this matter.

¶34 Miesmer contends that, regardless of the District Court's findings, it was required to advise him about the possibility of a "special parole restriction" under § 46-12-210(1)(a)(iii), MCA, prior to permitting his guilty plea. Otherwise, he avers, his guilty plea was not made "knowingly and voluntarily." While the statute obligates the District Court to "determine that the defendant understands . . . the maximum penalty provided by law, *including the effect of any . . . special parole restriction*," § 46-12-210(1)(a)(iii), MCA (emphasis added), we have previously held that "special parole restrictions" are not the same as discretionary parole restrictions under Montana law. *State v. Thomas*, 285 Mont. 112, 122, 946 P.2d 140, 146 (1997) ("[T]he phrasing of the statute indicates that the parole restriction must be one that is provided by law, and does not refer to discretionary parole restrictions . . . ."). The District Court made a discretionary parole restriction here, and it was not required to advise Miesmer about that potential outcome when he pleaded guilty. *Thomas*, 285 Mont. at 122, 946 P.2d at 146.

¶35 Miesmer argues further that the District Court erred in making its determination that he received sound legal advice and generally made informed decisions during the District Court proceedings. Miesmer purports that his erratic decision making stemmed from IAC and a corresponding lack of information and understanding, thus his guilty plea could not have been made "knowingly or voluntarily." He contends that, had he received effective counsel, he would have asserted affirmative defenses and better understood the limitations involved with pleading guilty.

¶36 The vacillations in Miesmer's defense strategy do not suggest to us deficiencies with counsel. The record reflects that his attorneys adequately apprised him of the advantages and disadvantages that pleading open portended compared with a plea agreement or not pleading at all. Before he signed the Notice of Intent and Waiver, Miesmer already had extensive discussions about his options with his attorneys. When he waived his rights, Miesmer knew that he was forfeiting the right to assert affirmative defenses and argue for lesser-included offenses. Miesmer was not rushed, and neither Frisbie nor the District Court indicated that the status hearing was his last opportunity to plead guilty. Finally, Miesmer was informed that the District Court had the discretion to restrict parole: Frisbie and Scott met with Miesmer at jail shortly after the State counter-offered its draft plea agreement. The draft plea agreement advised Miesmer in two separate places that the District Court retained discretion to restrict parole regardless of his plea. Miesmer made the decision to waive his rights and plead.

¶37 The District Court did not clearly err in its finding that Miesmer was a sophisticated defendant who could effectively manipulate procedure to achieve certain outcomes. Nor

11

did it err in finding that Miesmer's demeanor throughout the proceedings did not indicate remorse, a genuine interest in taking accountability, or that he could not be rehabilitated to a meaningful degree.

¶38 Miesmer entered his guilty plea and waived his rights knowingly, voluntarily, and intelligently. *Humphrey*, ¶ 14.

¶39 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶40 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE