DA 13-0052

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 132

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JULIAN JAMES HENDRICKSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DC 12-128
                Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Gregory Hood, Assistant
          Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Pamela P. Collins, Assistant
          Attorney General; Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney; Shawn Thomas,
          Deputy County Attorney; Missoula, Montana

                      Submitted on Briefs:  March 26, 2014
                                Decided:  May 20, 2014

Filed:

              _____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Julian James Hendrickson appeals the judgment of the Montana Fourth Judicial District Court. The sole issue is whether the District Court erred when it denied Hendrickson's motion to withdraw his guilty plea. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On February 8, 2012, Jenny LaTray reported to law enforcement that her ex-boyfriend, Hendrickson, had entered her residence without permission and assaulted her the previous night. LaTray told the officers that Hendrickson had crawled through her bedroom window at night, punched her repeatedly in the head and face, and choked her for over an hour. LaTray reported that Hendrickson had threatened to beat her again if she reported the incident to the police, and that he forced her to write a list of the names and addresses of family and friends that would allow him to find her if she ever told anyone about the assault. The responding officers observed visible injuries on LaTray. The crime scene corroborated her story.

¶3 The State charged Hendrickson by information on March 22, 2012, with aggravated burglary and tampering with witnesses and informants. During arraignment, the District Court told Hendrickson that the charges against him carried a maximum penalty of fifty years and a $100,000 fine. Hendrickson told the court that he understood and pleaded not guilty to both counts. The State did not file a notice of intent to pursue a persistent felony offender (PFO) designation or otherwise indicate that it intended to pursue a PFO designation. Hendrickson was released on pretrial supervision.

¶4     Between February 8, 2012, and May 9, 2012, LaTray gave four taped statements to law enforcement. In her first two statements, she maintained that Hendrickson broke into her residence and assaulted her. On May 1, she recanted those statements and stated that another man, named John Dean or John Gibson, actually assaulted her. On May 9, she returned to her original story and explained that she had invented the statements about the other man.

¶5     While Hendrickson was released on bond, he was arrested for allegedly placing several telephone calls to LaTray in violation of the conditions of his release. On May 30, Hendrickson made a recorded phone call from jail to his current girlfriend, Natalie Fleming, in which he seemed to suggest that Fleming should try to take the blame for contacting LaTray. Based on the recording of this call, the State filed an amended information on August 1, 2012, charging Hendrickson with an additional count of tampering with witnesses and informants.

¶6     The State offered that in return for a plea of guilty on the tampering charge for the call to Fleming, the State would not pursue the other charges and would recommend a total sentence of ten years with eight suspended. The agreement would allow Hendrickson to argue for a ten-year commitment with all ten years suspended. Additionally, the State agreed not to file a petition to revoke Hendrickson's conditional pre-trial release based on positive urinalysis tests for methamphetamine. The State informed him that if the plea negotiations failed, the State would file another amended

information to add several new charges against him, including sexual intercourse without consent and aggravated assault.

¶7 Hendrickson ultimately agreed to the State's offer and the agreement was reduced to writing. He signed a document entitled "Plea of Guilty and Waiver of Rights," which stated that "[t]he maximum possible punishment provided by law for the above-named offense is: State Prison not to exceed 10 years and/or fine of $50,000." A line in the document regarding the potential for sentence enhancement for previous offenses was marked as inapplicable.

¶8 Hendrickson appeared in court for a change of plea hearing on August 1, 2012. During the court's colloquy, the court explained the charge against Hendrickson and told him, "You understand that you are now charged with the offense of tampering with witnesses and informants. That's a felony. That carries up to a potential of ten years in the State prison and/or a $50,000 fine. Do you understand that?" Hendrickson explained that he understood the charge and the consequences of changing his plea. He stated that he was not impaired by alcohol or drugs and that he was satisfied with the services of his attorney, John Smith. Hendrickson summarized the factual basis for the plea, stating, "I purposely induced Natalie into testifying falsely." Smith stated that the plea was free and voluntary. The court accepted Hendrickson's guilty plea.

¶9 After the plea was entered by the court, LaTray contacted the law firm representing Hendrickson to recant her story again—this time claiming that Hendrickson had not beaten her or called her afterward. LaTray recorded another taped statement with

4

Smith where she claimed that Fleming, not Hendrickson, had been the one to call her. Hendrickson engaged new counsel and moved to withdraw his guilty plea based on "new evidence" from LaTray's most recent version of the events giving rise to the charges against him. The State opposed the motion.

¶10 In his reply brief, Hendrickson made an additional argument that his plea was involuntary because his previous counsel, Smith, had incorrectly explained to Hendrickson that he faced mandatory PFO sentence enhancements because he previously had been convicted of a felony for tampering with a witness. Smith's affidavit, filed with the reply brief, stated that he incorrectly told Hendrickson that, if convicted, he faced a mandatory, consecutive five to one hundred years in prison for being a PFO. Because Hendrickson had completed a deferred imposition of sentence on his prior felony offense and successfully moved to dismiss the charge, he was not eligible for PFO designation. Smith attested that his incorrect legal advice was a significant factor in Hendrickson's decision to plead guilty.

¶11 The District Court denied Hendrickson's motion to withdraw his guilty plea. The court noted that, "[a]t most, what has been presented here, is that LaTray keeps changing her story." The court pointed out that the witness with whom Hendrickson agreed he had tampered was Fleming, not LaTray. The court agreed that if Smith had told Hendrickson that he faced a sentence enhancement based on his potential for designation as a PFO, the advice was incorrect. The court noted, however, that Hendrickson signed a plea agreement form and a waiver of rights, and engaged in a proper colloquy at his change of

5

plea hearing. The court also observed that Smith's advice correctly determined that there was a substantial risk of significantly more punishment if the plea was rejected—up to 160 years if convicted on all charges the State intended to pursue. The court concluded that the plea was not involuntary and that Hendrickson could not demonstrate good cause for allowing him to withdraw his guilty plea. Hendrickson appeals the court's decision.

## STANDARD OF REVIEW

¶12 This Court reviews a district court's denial of a motion to withdraw a guilty plea de novo, because whether a plea was entered voluntarily is a mixed question of law and fact. *State v. Valdez-Mendoza*, 2011 MT 214, ¶ 12, 361 Mont. 503, 260 P.3d 151. We review the trial court's underlying factual findings for clear error. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254. We review for correctness the district court's interpretation of the law and its application of the law to the facts. *Warclub*, ¶ 23.

## DISCUSSION

¶13 Hendrickson contends that he should be allowed to withdraw his guilty plea for two related reasons. First, he argues that his plea was involuntary because his attorney misinformed him about his PFO eligibility. Second, he argues that his attorney provided ineffective assistance of counsel for the same reason. This second argument asserts a stand-alone ineffective assistance claim that was not presented to the District Court and we decline to address the issue on appeal. *State v. McFarlane*, 2008 MT 18, ¶ 12, 341 Mont. 166, 176 P.3d 1057. Hendrickson does not appeal the denial of his motion on the ground that LaTray's most recent statement amounted to "new evidence."

6

¶14 The remaining issue is whether good cause exists to allow Hendrickson to withdraw his guilty plea because his counsel incorrectly advised him that he was PFO eligible. Pursuant to § 46-16-105(2), MCA, a court may for good cause permit a plea of guilty to be withdrawn and a plea of not guilty substituted within one year after the judgment becomes final. "Good cause" includes the involuntariness of the plea, but it may include other reasons. *Warclub*, ¶ 16. To prove that a plea was involuntary, "allegations of having had certain mental impressions at the time of the plea must be supported by objective proof in the record." *State v. Brinson*, 2009 MT 200, ¶ 12, 351 Mont. 136, 210 P.3d 164 (quoting *State v. Humphrey*, 2008 MT 328, ¶ 23, 346 Mont. 150, 194 P.3d 643). It is the defendant's obligation to provide such proof. *See State v. Robinson*, 2009 MT 170, ¶¶ 17-18, 350 Mont. 493, 208 P.3d 851. If any doubt exists on the basis of the evidence presented regarding whether a guilty plea was voluntarily or intelligently made, the doubt must be resolved in favor of the defendant. *State v. Melone*, 2000 MT 118, ¶ 14, 299 Mont. 442, 2 P.3d 233.

¶15 This Court utilizes the standard articulated in *Brady v. U.S.*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69 (1970), to determine whether a plea was voluntarily made. *State v. Prindle*, 2013 MT 173, ¶ 17, 370 Mont. 478, 483, 304 P.3d 712. The *Brady* standard requires that, to make a voluntary plea, a criminal defendant must be "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *State v. Lone Elk*, 2005 MT 56, ¶ 21, 326 Mont. 214, 108 P.3d 500, *overruled in part on other grounds*, *Brinson*, ¶ 9 (quoting *Brady*, 397

U.S. at 755, 90 S. Ct. at 1472). "Under *Brady*, we will not overturn a district court's denial of a motion to withdraw a guilty plea if the defendant was aware of the direct consequences of such a plea, and if his plea was not induced by threats, misrepresentation, or an improper promise such as a bribe." *Warclub*, ¶ 32 (citing *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472).

¶16 When evaluating an argument that counsel's ineffectiveness impacted the voluntariness of the defendant's plea, we apply the *Strickland* test for ineffective assistance of counsel. *McFarlane*, ¶ 11; *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under *Strickland*, "the defendant must show (1) that his counsel's advice fell outside the range of competence demanded of a criminal attorney and (2) but for counsel's deficient performance, he would not have entered a guilty plea." *McFarlane*, ¶ 11. We have recognized that the defendant bears a significant burden under *Strickland*; we may determine that counsel committed an error and still conclude that the defendant did not carry his burden to establish an error serious enough to allow him to withdraw his plea. *See Prindle*, ¶ 23; *Weaver v. State*, 2005 MT 158, ¶ 20, 327 Mont. 441, 114 P.3d 1039.

¶17 Determining whether a defendant entered a plea voluntarily and whether a district court erred in denying a motion to withdraw a plea requires case-specific considerations, including "the adequacy of the district court's interrogation, the benefits obtained from a plea bargain, the withdrawal's timeliness, and other considerations that may affect the credibility of the claims presented." *McFarlane*, ¶ 17.

¶18 As an initial matter, we agree with the District Court that, if Smith told Hendrickson that he could be subject to a PFO sentence enhancement, the advice was incorrect. *State v. Gladue*, 209 Mont. 235, 240, 679 P.2d 1256, 1259 (1984). We also agree with the court, however, that Hendrickson has not met his burden to show good cause for the withdrawal of his plea.

¶19 Prior to accepting a guilty plea, the trial court must satisfy the requirements of §§ 46-12-210 and 46-16-105, MCA. *Melone*, ¶ 16. Section 46-12-210(1), MCA, provides, in relevant part, that "[b]efore accepting a plea of guilty or nolo contendere, the court shall determine that the defendant understands the maximum penalty provided by law, including the effect of any penalty enhancement provision." Section 46-16-105, MCA, provides, in relevant part, that a court may accept a plea of guilty or nolo contendere when "the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law that may be imposed upon acceptance of the plea." These requirements were satisfied when the District Court advised Hendrickson at the plea hearing that he faced a maximum penalty of ten years in prison and a $50,000 fine. The court said nothing about a potential PFO enhancement.

¶20 Even if Hendrickson's counsel misled him regarding his potential PFO status, Hendrickson must demonstrate that the misrepresentation induced his plea. *Warclub*, ¶ 32. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Lone Elk*, ¶ 26 (quoting *Brady*, 397 U.S. at 757,

9

90 S. Ct. at 1473). In *Lone Elk,* after the defendant pleaded guilty, counsel for the defendant testified that she incorrectly had told Lone Elk that the judge could not require sexual offender treatment for burglary despite that the underlying felony he intended to commit was sexual assault. *Lone Elk*, ¶ 4. The defendant moved to withdraw his plea. The district court denied the motion. We affirmed, observing that the district court specifically told Lone Elk during the plea colloquy that his sentence could require sexual offender treatment and that Lone Elk had admitted in court that he understood the repercussions of his decision. *Lone Elk*, ¶ 27.

¶21 A similar conflict between the plea colloquy and the advice of counsel exists in this case. The District Court clearly stated the maximum penalty that Hendrickson faced for the charge against him and the maximum penalty was stated correctly in the signed document containing his plea of guilty and waiver of rights. Hendrickson does not challenge the adequacy of the plea colloquy. Smith's post-plea affidavit is the only document in the record that suggests that Hendrickson's plea was involuntary. Hendrickson did not submit his own affidavit or provide testimony confirming that the incorrect advice was a factor in his decision to plead guilty. Smith's affidavit does not establish that Hendrickson misunderstood the potential maximum sentence that he faced. In light of the fact that the District Court and the written plea agreement clearly explained the correct maximum sentence, the record shows that Hendrickson was well-advised of the penalty he faced.

10

¶22 We stated in *Lone Elk* that involuntariness could be established if the plea was induced, "however slightly," by improper promises, threats or misrepresentations. *Lone Elk*, ¶ 21. We made clear in *Brinson*, however, that the "however slightly" language had no place in the determination of voluntariness of a plea, and overruled *Lone Elk* to that extent. *Brinson*, ¶¶ 8-9. Rather, in ruling on a motion to withdraw a guilty plea, the trial court is to examine all relevant "case-specific considerations." *McFarlane*, ¶ 17. Other considerations affect the credibility of Hendrickson's claims in this case. The District Court found that Hendrickson was properly advised in open court and understood the possible punishment for his offense. The court further found that Hendrickson faced additional charges that the State would pursue if he did not accept the plea agreement, including aggravated burglary, sexual intercourse without consent, aggravated assault, and another tampering with witnesses charge. Smith correctly explained to Hendrickson that there was a substantial risk of significantly more punishment if the plea was rejected. Hendrickson received a significant "benefit of the bargain" by accepting the State's plea offer. *State v. Muhammad*, 2005 MT 234, ¶ 24, 328 Mont. 397, 121 P.3d 521. He could have faced up to 180 years of incarceration for all charges. He also might have been subjected to a PFO sentence enhancement—although for different reasons than those mistakenly articulated by Hendrickson's counsel—because he allegedly committed four felonies on February 7, 2012, against LaTray, and another felony on May 30, 2012, when he induced Fleming to testify falsely. *See State v. Anderson*, 2009 MT 39, ¶ 14, 349 Mont. 245, 203 P.3d 764 ("[T]he PFO statute can be used to enhance a sentence when the

11

second felony was committed before conviction of the first felony."). Even if the State did not pursue additional charges, Hendrickson faced an additional forty years and $50,000 on the initial aggravated burglary charge. Thus, while his counsel's statement regarding Hendrickson's PFO status was incorrect, it amounted to an "inaccurate prediction" rather than a "gross mischaracterization of the likely outcome." *Prindle*, ¶¶ 30-32.

¶23 The timeliness of Hendrickson's argument to withdraw his plea also does not support that his counsel's advice rendered his plea involuntary. Hendrickson initially moved to withdraw his plea because LaTray had changed her story. It was not until his reply brief that he argued that he would not have pleaded guilty but for his counsel's incorrect advice. This indicates that the PFO claim was not the primary reason that Hendrickson's plea was alleged to have been involuntary.

¶24 After full consideration, the record supports the District Court's determination that Hendrickson was fully aware of the direct consequences of his plea and that the plea was not induced by misrepresentation. The reference in *Melone*, ¶ 20, to "any doubt" about voluntariness of a plea cannot be interpreted, as suggested by the Dissent, to be tantamount to the "however slightly" standard we expressly disapproved in *Brinson*. The record must be examined as a whole to determine whether the plea was voluntary. Smith's mistaken statements regarding the potential for a PFO designation are but one factor in this analysis. The District Court's findings of historical fact surrounding the entry of Hendrickson's plea are not clearly erroneous. Upon examination of all

case-specific considerations, we conclude that Hendrickson has not shown that, but for counsel's deficient performance, he would not have entered a guilty plea.

## CONCLUSION

¶25 The District Court's order denying Hendrickson's motion to withdraw his guilty plea is affirmed.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Patricia Cotter, dissenting.

¶26 I respectfully dissent from our decision to affirm the District Court's denial of Hendrickson's motion to withdraw his guilty plea.

¶27 The Court concludes that Hendrickson did not meet his burden under the second prong of *Strickland* and therefore failed to raise "any doubt" regarding the voluntariness of his plea. Opinion, ¶¶ 18, 24. Under *Strickland*'s second prong, a defendant must show that, but for counsel's deficient performance, a reasonable probability exists that he would not have entered a plea of guilty. *State v. Henderson*, 2004 MT 173, ¶ 4, 322 Mont. 69, 93 P.3d 1231; *St. Germain v. State*, 2012 MT 86, ¶ 11, 364 Mont. 494, 276 P.3d 886 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings." *St. Germain*, ¶ 11 (citation

13

omitted). Smith's affidavit clearly establishes that, but for his incorrect advice, there is a "reasonable probability" that Hendrickson would not have pleaded guilty.

¶28 Smith testified he told Hendrickson that "if he was convicted of even a single felony offense, he would face a mandatory, consecutive, 5-100 years in prison for being a persistent felony offender." Hendrickson was apparently reluctant to sign the plea agreement but eventually did so after his counsel "reiterated . . . the good reasons to accept the plea agreement, including that if he proceeded with a guilty plea to the tampering charge concerning Natalie he would not face being designated a persistent felony offender." Smith testified that he "believes the stated potential application of the persistent felony offender statute was a significant factor in [Hendrickson's] decision to plead guilty." These unrefuted statements raise a plain and obvious doubt about the voluntariness of the plea, which must be resolved in favor of Hendrickson. As we stated in *Melone*, if "there is any doubt that a guilty plea was not voluntarily or intelligently made, the doubt must be resolved in favor of the defendant." *Melone*, ¶ 14.

¶29 I find it puzzling that the Court reaches the decision it does, given the correct statements of law set forth in ¶ 15 of the Opinion. As the Court notes, "the actual value of any commitments made to [the defendant] by the court, prosecutor, or his own counsel" are of significant consequence in determining the voluntariness of a plea. *Lone Elk*, ¶ 21. There is no dispute that Hendrickson's lawyer incorrectly advised him he would face a PFO designation unless he accepted the plea deal, a fact even the Court is willing to concede. Opinion, ¶ 18. Nor is there any doubt in Smith's mind that the

potential of a PFO sentence was "a significant factor" in Hendrickson's decision to plead guilty. As the Court further observes in ¶ 15, this Court "will not overturn a district court's denial of a motion to withdraw a guilty plea if . . . his plea was not induced by threats, *misrepresentations*, or an improper promise such as a bribe." *Warclub*, ¶ 32 (citing *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472) (emphasis added); *see also State v. Leitheiser*, 2006 MT 70, ¶ 20, 331 Mont. 464, 133 P.3d 185, *overruled in part on other grounds*, *State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978 (A plea is voluntary where defense counsel, the State, and the District Court have fully advised the defendant of the consequences of his plea and "did not induce him to enter the agreement based on threats, misrepresentation or improper promises."). I find it impossible to reconcile the Court's concession that Hendrickson's lawyer misrepresented the consequences Hendrickson faced if he did not accept the plea deal with its conclusion that his plea was nonetheless voluntary.

¶30 The Court reasons that Hendrickson received a significant "benefit of the bargain," and that "Smith correctly explained to Hendrickson that there was a substantial risk of significantly more punishment if the plea was rejected." Opinion, ¶ 22. While this may be true, the Court misses the point. Hendrickson had the right to evaluate his options and his prospects free of misrepresentations. He had the right to make a fully informed choice, even if that choice might not turn out to be in his best interests. It is not this Court's prerogative to rationalize away an involuntary guilty plea because it might have been the wisest course for the defendant to take. Where a plea is entered on the basis of a

15

misrepresentation, under the foregoing authorities the proper course is to allow the defendant to withdraw his guilty plea. Because Smith's advice was clearly wrong and Hendrickson acted upon it, Hendrickson's plea was not voluntary. I would therefore hold that the District Court erred in denying Hendrickson's motion to withdraw his guilty plea.

/S/ PATRICIA COTTER

Justice Laurie McKinnon joins in the dissenting Opinion of Justice Cotter.

/S/ LAURIE McKINNON