FILED

04/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0413

DA 19-0413

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 90N

CITY OF MISSOULA,

      Plaintiff and Appellee,

  v.

AARON DEAN STARR,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-19-148
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      William Boggs, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Damon Martin, Assistant
Attorney General, Helena, Montana

      James P. Nugent, Missoula County Attorney, Keithi Worthington, Chief
Prosecuting Attorney, Missoula, Montana

          Submitted on Briefs:  February 10, 2021

                    Decided:  April 13, 2021

Filed:

                        _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Aaron Dean Starr appeals from an order entered in the Fourth Judicial District Court, Missoula County, affirming the Missoula City Court's denial of his motion to withdraw his guilty plea.  We affirm.

¶3      On November 16, 2017, Missoula police officers responded to Starr's residence after his girlfriend, Stephanie Bean, reported an altercation with Starr.  Bean told officers that Starr had thrown her to the ground, kicked her in the ribs, and stomped on her throat.  Starr was charged with Partner Family Member Assault (PFMA), Resisting Arrest, and Assault.  He made his initial appearance on these charges by video from the Missoula County Detention Center on November 17, 2017.  No representative from the Public Defender's Office was present, and Starr did not consult with an attorney before his plea.

¶4      Nonetheless, the record reflects that the Municipal Court Judge explained Starr's rights and how Starr's case would proceed. The Judge explained to Starr that he had the right to plead not guilty and that doing so would allow him time to consult with an attorney and evaluate the evidence against him. The Judge explained the State's burden of proof at trial, that Starr would have the right to confront and cross-examine any

2

witnesses called against him, and that Starr had the right to remain silent or testify on his own behalf should the matter proceed to trial. The Judge explained that Starr had a right to counsel if he could not afford counsel, or he could hire his own attorney. The Judge also advised Starr that if he was not a citizen and was convicted, he might be deported, and if convicted and failed to follow court orders, he could lose his driving privileges. Starr was then advised of the specific charges filed against him and the allegations made as to those charges. The Judge advised Starr of the maximum and minimum penalties for each offense.

¶5 Starr stated that he understood these rights but wanted to plead guilty to Resisting Arrest and PFMA. The City informed the Municipal Court that it would dismiss the Assault charge if Starr was pleading guilty to the other offenses. The Judge asked Starr if he understood what the City was offering, and Starr replied that he did. The Judge then asked: "And you understand that you do have the right to meet with counsel prior to entering a plea in this case?" Starr responded that he understood. The Judge asked: "And you would be waiving that right?" to which Starr replied: "Yes I am." The Judge then reiterated and confirmed that Starr understood the rights he was giving up by pleading guilty. Starr stated that he understood.

¶6 Upon the Judge's request, Starr then explained what had occurred on November 16, 2017. At one point during the colloquy, Starr stated the following:

> Then I agreed to have the cops come to maybe assist me, because I was protecting my children and my house, and I'm a single father, and I have that right to protect their safety, when somebody gets violent toward me like that . . . I felt attacked or violated . . . so that led to harming a family member . . . .

3

The Judge asked Starr whether he believed his actions were done in self-defense. Starr responded that he "just didn't want an altercation with [Bean] and tried [his] best to avoid it." The Judge further clarified: "OK, but it nonetheless turned physical, and you were the one that then caused injury to her?" Starr responded: "Yes." Following additional questions regarding his plea to Resisting Arrest, the Municipal Court accepted Starr's guilty pleas, imposed a sentence on both counts and, per the City's offer, dismissed the Assault charge.

¶7 For the PFMA charge, the Municipal Court imposed a sentence of 12 months jail time, all suspended except two days (with credit for the two days served), a fine of $1,000, with $800 suspended, a $200 credit for time served, and a $110 surcharge fee. For Resisting Arrest, the court imposed a 6-month suspended jail term, along with a $100 fine and a $100 surcharge. The court ordered Starr to avoid alcohol and bars, to avoid contacting Bean, and to complete a chemical dependency evaluation, anger management program, and a two-hour family violence educational session.

¶8 On August 27, 2018, the City filed an Affidavit for Leave to File an Information charging Starr with two additional counts of PFMA. On November 16, 2018, Starr filed a motion to withdraw his guilty plea from the 2017 PFMA conviction. After the Municipal Court denied the motion, Starr appealed to the District Court. The District Court affirmed the Municipal Court. Starr appeals from the District Court's decision.

4

¶9 Starr argues on appeal that the factual basis for his plea was ambiguous as to a possible justifiable use of force claim; the colloquy was deficient in ascertaining whether Starr understood the direct consequences of his plea; and the plea was coerced. Starr argues each rendered his plea involuntary and constitutes good cause for withdrawal. We address each argument in turn.

¶10 On Starr's appeal from the Municipal Court, the District Court functioned as an intermediate appellate court. *See* §§ 3-5-303 and 3-6-110, MCA. On Starr's appeal to this Court, we review the case as if Starr had originally filed his appeal in this Court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461 (citations omitted). We examine the record independently of the District Court's decision, applying the appropriate standard of review. *Cantu*, ¶ 10 (citation omitted). Our ultimate determination is whether the District Court, in its review of the trial court's decision, reached the correct conclusions under the appropriate standards of review. *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. We review the trial court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine if they are correct. *State v. Newbary*, 2020 MT 148, ¶ 5, 400 Mont. 210, 464 P.3d 999 (citation omitted). Whether a plea is voluntary is a mixed question of law and fact that this Court reviews de novo for correctness. *Newbary*, ¶ 5 (citation omitted).

¶11 Section 46-16-105(2), MCA, permits a defendant to withdraw a previously entered guilty plea for good cause. "'Good cause' includes the involuntariness of the plea, but it may include other criteria." *State v. Warclub*, 2005 MT 149, ¶ 16, 327 Mont. 352,

114 P.3d 254 (citing *State v. Lone Elk*, 2005 MT 56, ¶ 19, 326 Mont. 214, 108 P.3d 500 (*rev'd in part on other grounds*)). A plea must be voluntary because the defendant is waiving his constitutional rights to not incriminate himself and to a trial by jury or judge. *State v. Prindle*, 2013 MT 173, ¶ 17, 370 Mont. 478, 304 P.3d 712 (citing *Brady v. U.S.*, 397 U.S. 742, 748 (1970)).

¶12 This Court has adopted the *Brady* standard to determine if a plea was voluntarily made. *State v. Hendrickson*, 2014 MT 132, ¶ 15, 375 Mont. 136, 325 P.3d 694 (citation omitted). Under the *Brady* standard, a plea is considered voluntary if the defendant is fully aware of the direct consequences, including the actual value of any commitments the court, prosecutor, or the defendant's own counsel made to the defendant. *Hendrickson*, ¶ 15 (citing *Brady*, 397 U.S. at 755). We "will not overturn a district court's denial of a motion to withdraw a guilty plea if the defendant was aware of the direct consequences of such a plea, and if his plea was not induced by threats, misrepresentation, or an improper promise such as a bribe." *Hendrickson*, ¶ 15 (quoting *Warclub*, ¶ 32 (citing *Brady*, 397 U.S. at 755)).

> Determining whether a defendant entered a plea voluntarily and whether a district court erred in denying a motion to withdraw a plea requires case-specific considerations, including 'the adequacy of the district court's interrogation, the benefits obtained from a plea bargain, the withdrawal's timeliness, and other considerations that may affect the credibility of the claims presented.'

*Hendrickson*, ¶ 17 (quoting *State v. McFarlane*, 2008 MT 18, ¶ 17, 341 Mont. 166, 176 P.3d 1057).

¶13    Starr first argues that the factual basis for his plea was ambiguous as to a possible justifiable use of force claim. Starr maintains he raised a self-defense claim when he stated during the colloquy: "I was being attacked, so that's where she might have suffered some injury." . . . and later "because I was protecting my children and my house, and I'm a single father, and I have that right to protect their safety, when somebody gets violent toward me like that . . . I felt attacked or violated . . . ." However, when the Municipal Court Judge attempted to clarify with Starr whether there was a viable self-defense claim, ("you're not saying that . . . physically she was coming at you") Starr answered: "No." Starr argues on appeal that he was attempting to prevent Bean's violence to protect his children. However, as the District Court pointed out, it is apparent after reviewing the audio recording that the children were not awake during this argument.

¶14    The Municipal Court reviewed this issue, read the briefs, listened to the audio recording, and concluded that Starr's statements, when taken together with the Judge's clarifying questions, did not reveal that Starr had even raised a self-defense claim. We agree. At most, Starr's explanation of the events revealed that a loud argument over lost car keys took place and Starr felt it unfair that Bean was blaming him. Starr did not describe that Bean had been physically violent, that she made any unwanted physical contact with Starr, or that she engaged in any conduct that would cause Starr reasonable

7

apprehension of bodily injury.[1]  The reviewing Municipal Court found: "What is lacking in the exchange is any statement, or even clear suggestion, that the victim had physically assaulted him in any way."  The reviewing Municipal Court noted:

> The choice of the word "attacked" appears to be the only suggestion in the colloquy that [Starr] was somehow asserting a legal claim of self-defense. Although that word does require scrutiny, the totality of circumstances of the colloquy indicates the Defendant was not asserting some kind of physical attack that could arguably imply a legal defense of self-defense.

After reviewing the record, we conclude these findings are not clearly erroneous.  The presiding Municipal Court reasonably found that Starr had not raised a claim of self-defense.  Such interpretation and application of the law is correct.

¶15  Starr next argues that the colloquy was deficient in ascertaining whether Starr understood the direct consequences of his plea.  Prior to accepting a guilty plea, a trial court must satisfy the requirements of §§ 46-12-210 and 46-16-105, MCA.[2]

---

[1] On appeal to the District Court, Starr claimed the reviewing Municipal Court ignored the legal concept that a loud argument might give rise to Starr having reasonable apprehension of bodily injury.  The District Court stated in its order:

> "[Starr] ignores the requirement in a justifiable use of force defense that the amount of force used must be 'reasonable.'  A reasonable response would be to tell [Bean] to shut up, yell back, or call the cops and ask them to come and remove her.  Although he does not have to retreat, if he truly does not want an altercation, all he has to do is leave.  Taking physical action of throwing her to the ground, kicking her in the ribs, bruising her on her arm and neck when all she has done is yell, is unreasonable."  We agree.

[2] Under § 46-12-210, MCA, in relevant part, a defendant must understand the nature of the charges; the maximum and minimum penalties provided by law for such charges; their right to plead not guilty; their right to be tried by a jury and to confront and cross-examine witnesses against them; and their right to not be compelled to reveal personally incriminating information. A defendant not represented by an attorney must understand that they have the right to be represented by an attorney and that one may be appointed to them if they cannot afford one. They must understand that by pleading guilty, they waive their right to a trial.  If the defendant is

8

*State v. Melone*, 2000 MT 118, ¶ 16, 299 Mont. 442, 2 P.3d 233 (citation omitted). The record demonstrates that the Municipal Court thoroughly complied with these requirements and reviewed Starr's applicable rights, even repeating specific applicable rights throughout the arraignment, such as his right to counsel. The record further indicates that the Judge waited for confirmation from the City regarding whether the PFMA would be a first or second offense so the Judge could properly inform Starr of the applicable penalty prior to entering a plea, despite having already reviewed both potential penalties.

¶16    Nevertheless, Starr now asserts on appeal that although informed by the Municipal Court of the maximum penalties and the rights he would be waiving prior to pleading guilty, he was not informed that the Municipal Court could (and would) impose the maximum sentence for each count. He also asserts that the Municipal Court did not address whether Starr understood the probation conditions that the Municipal Court would impose and what each of those conditions required of Starr. Starr argues that for him to have fully understood the consequences of his guilty plea, the Municipal Court "would have had to direct his attention to each of the probation conditions it intended to impose, detailing such matters as cost for each, [and] hours required to perform each . . . ." A court accepting a guilty plea is not required to advise a defendant of every possible collateral consequence (*United States v. Wills*, 881 F.2d 823, 825

_____

not a citizen, they must understand that their guilty plea might result in deportation. Section 46-16-105(b), MCA, provides, in relevant part, that a court must accept a guilty plea when "the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law that may be imposed upon acceptance of the plea."

9

(9th Cir. 1989); *see Torrey v. Estelle*, 842 F.2d 234, 235-36 (9th Cir. 1988)) nor the financial or social cost of each probation condition as it potentially could relate to a defendant.  Simply because the results failed to turn out as he expected or desired does not mandate a court to allow Starr to withdraw his guilty plea. *Lone Elk*, ¶ 27.

¶17 Starr faults the Municipal Court for making no inquiry into whether the plea was primarily motivated by a need for immediate release from jail.  Starr offers no objective proof to support a claim of coercion on the basis that he needed to care for his children other than his reference that he is his children's sole custodian and was 'panicked' at the prospect of them being alone.  *State v. Brinson*, 2009 MT 200, ¶ 12, 351 Mont. 136, 210 P.3d 164 ("allegations of having had certain mental impressions at the time of the plea must be supported by objective proof in the record.").  Notably, neither the City nor the Municipal Court promised Starr an immediate release from custody upon pleading guilty.

¶18 Regardless, Starr contends that his plea was coerced because he *was* primarily motivated to plead guilty by a need for immediate release from jail.  Starr, however, knew he faced potential jail time prior to entering his guilty plea, and there were no guarantees or assurances from the City or the Municipal Court that any plea agreement would allow him to be immediately released.  To the contrary, Starr was aware of the applicable penalties and that he might face additional jail time.  The Municipal Court read Starr the penalties for the charges, gave Starr the option to ask for an attorney, and informed him that if he chose to plead not guilty, he would have more time to review the case and facts.  Starr pleaded guilty anyway.  Neither the City, nor the Municipal Court

10

induced him to enter the agreement based on threats, misrepresentations, or improper promises. Even if Starr's guilty plea was motivated in part by his desire to be free from custody and return to his children, we are convinced that his plea was voluntarily made, and we have no reason to doubt that his admission of guilt was truthful.

¶19 Importantly, we note that Starr received the benefit of the bargain from his plea agreement. At the beginning of the arraignment, the Municipal Court instructed Starr on the penalties for PFMA, Resisting Arrest, and Assault. When Starr indicated that he wished to plead guilty, the City dropped the Assault charge as a part of the plea. At sentencing, Starr received a 12-month jail sentence, with all except two days suspended. The Municipal Court rounded Starr's 36-hour jail time—already served—up to two days, and as a result, Starr was not required to serve any additional jail time. The Municipal Court fined Starr a total of $310 out of a potential maximum of $2,000. By all accounts, Starr's guilty plea was beneficial for him.

¶20 Finally, as a "case-specific consideration," we acknowledge the fact that Starr's plea was uncounseled, and we recognize the discretion with which a trial court must exercise when accepting such a plea. We note, however, that any criminal defendant has a right to waive counsel and plead guilty. The Sixth Amendment does not require a court to "advise the defendant that waiving the assistance of counsel . . . entails the risk that a viable defense will be overlooked," nor does it require the court "admonish the defendant that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." *Iowa v. Tovar*, 541 U.S. 77, 81 (2004). On at least three occasions the

11

Municipal Court either advised Starr of his right to counsel or confirmed that Starr understood that he was waiving such right. The Municipal Court informed Starr of the nature of the charges against him and the range of allowable punishments. Starr exercised his right to proceed without counsel but doing so did not render his plea involuntary.

¶21 The District Court correctly upheld the Municipal Court's denial of Starr's motion to withdraw his guilty plea.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶23 We affirm.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE